Irving H. Saypol, J.
The plaintiffs’ motion for discovery and inspection of the report by the defendant’s physician of his physical examination of the plaintiffs is granted. Let a copy of the report be furnished within five days of the service of a copy of the order to be settled hereon.
The application is engulfed in a vigorous denunciation by the plaintiffs’ attorneys of the defendant’s attorney and his real client, the defendant’s insurance carrier. The grievance may be characterized as one of outrage portrayed by the initial incident in the litigation of claimed arrogant and disdainful dalliance for three and a half months before answering the complaint, ignoring and disregarding counsels’ repeated inquiries and supplications by letter and telephone. All of this, although within two weeks of the service of the complaint, the plaintiffs submitted voluntarily to a physical examination by the defendant’s doctor. The intercession of the State Insurance Department was necessary to obtain service of the answer. It may be said that an inquest on the defendant’s obvious default would have been of questionable worth to the plaintiffs and I can see their predicament because of the exposure of their whole case to the defendant’s advantage, when, if, as is possible, the default were vacated. The defendant retorts conclusorily that at the threshold this is an “ unwarranted attack upon the defendant’s insurer obviously intended for the purpose of attempting to condition the ‘ mind ’ of this learned Court against the defend *344 ant.” True, whether at threshold or within, plaintiffs’ grievance is immaterial and is disregarded. But the court having been required to read it and its answer cannot help noticing the uncomplimentary conduct, if true. Nor is the statement of defendant’s counsel suggestive of the easy pliability of the court’s “mind”, either in the expression or in the possible reflection on the court’s fairness, complimentary to the utterer or to the court.
On the immediate question, whatever may have been the former practice, the tendency now is for complete open dealing. My learned colleague, Mr. Justice Arthur G. Klein, paved the way in Totoritus v. Stefan (10 Misc 2d 881), when he ordered up both the plaintiff’s statement to the defendant’s investigator and the physician’s report. Both had been obtained before the plaintiff had his lawyer. The Appellate Division of this department, affirming by a divided court, in both opinions (6 A D 2d 123), did not discuss the doctor’s report, but the application of its decision is indicated in the reporter’s summary. However, in Special Term’s opinion (10 Misc 2d 881), Justice Klein pointed to the opinion of our former colleague, now retired, the learned Mr. Justice Morris Eder, in Kuyamjian v. Murrah (5 Misc 2d 204) and those of our learned brothers, Justices Samuel H. Hoestadter and M. M. Levy, respectively, in Muratori v. 1231 Pugsley Ave. Realty Corp. (15 Misc 2d 276) and Kleinot v. Steiner (5 Misc 2d 951) as respectable precedents for the direction for a copy of the report in cases where the plaintiff has been examined pursuant to an order (Civ. Prac. Act, § 306).
It is accepted then that there are two established situations in which the plaintiff generally has a right to a copy of the doctor’s report, (1) where he voluntarily submits to the examination before he has a lawyer and later asks for the copy by discovery and inspection (Civ. Prac. Act, art. 32; Totoritus v. Stefan, supra), and (2) as a part of the proceeding in which he is ordered to submit to examination (Civ. Prac. Act, art. 29, § 306; Kuyamjian v. Murrah, supra; Muratori v. 1231 Pugsley Ave. Realty Corp., supra; Kleinot v. Steiner, supra). The procedure here for discovery (Civ. Prac. Act, art. 32; Totoritus v. Stefan, supra) involves a slightly different factual pattern. The plaintiff already had a lawyer, but he submitted voluntarily before answer. On my reasoning, it should make no difference that he is represented, if he submits voluntarily, be it before or after answer. In a case under section 306 of the Civil Practice Act, in which a copy to the plaintiff was directed in the Appellate Division, Third Department, by Bergan, J. P., writing for a unanimous court (Del Ra v. Vaughan, 2 A D 2d 156, 157), he *345 best said it in his usual felicitous way, of the progressive judicial policy: “ The general trend of the practice in personal injury cases is to attempt to narrow down the areas of medical dispute This observation was made after distinguishing evidence gathered in preparation for a trial from “ matters which the judicial power compels one party to disclose at the instance of his adversary.” The narrowing of disputes, of course, is enhanced by such disclosure. The latter quotation, the opinion shows, in its discussion refers to the pretrial deposition procedure in article 29 of the Civil Practice Act. There is no question that one who is examined before trial, whether by notice or order, has the right to his own testimony. But there is nothing, inherent or otherwise, which compels the plaintiff to submit to any physical examination, except by the statutory provision in section 306 of the Civil Practice Act.
When read, it is not an obligation on the plaintiff in the first instance. It constitutes a qualified right in the defendant to bespeak a favorable judicial discretion, which must be supported by a showing that the defendant is ignorant of the nature and extent of the injuries of which the plaintiff complains. Only on such a showing will the defendant have the examination, and then by a doctor who will be the court’s appointee. But, as shown, the plaintiff usually will have a copy of the report. In this connection an interesting sidelight presents itself upon a consideration of the operative effect of rule XII of the New York County Supreme Court Trial Term Buies, which conditions the placing of the case on the calendar (1) to the plaintiff making himself available for a physical examination, and (2) also making available for the defendant his hospital records. The latter requirement relates to the kind of pretrial disclosure discussed by Judge Beegaet in Del Ra (supra). Query, when the defendant has seen them, he may no longer assert his ignorance of the nature and extent of the injuries to meet the requirements of section 306 of the Civil Practice Act. Although the first subdivision does not directly mandate plaintiff’s submission to the examination providing only that he say when and where, that is its clear import. Whether the rule in this respect conflicts with the statutory provision, section 306 of the Civil Practice Act, is at least open to question. In any event, the plaintiff, by taking the initiative, might move under section 306 of the Civil Practice Act for an order for examination by the court’s doctor to enable a showing of compliance with rule XII.
These physical examinations in the general practice are matters of mutual accommodation. In such a case, a plaintiff *346 who submits voluntarily is penalized if he may not have a copy of the report. Conceivably, on the statute (Civ. Prac. Act, § 306) and rule (rule XII), the plaintiff could give the notice under the ride, insisting, however, on the court’s examiner, under section 306 of the Civil Practice Act, so as to assure himself of the report. It is just that a plaintiff in a negligence case should have the report when he saves adversary, himself and the court the burden in time, economy, labor and convenience, and furthermore gives the defendant the advantage of his own doctor as the examiner. To the contention that this may result in improper advantage in a given case, another answer is that in the statutory procedure the address may be to the judicial discretion by the defendant. In practical application, unless defendants are willing to afford these reports of their doctors to their adversaries in voluntary procedures, their alternative is examination by resort to the statute by the court’s doctor, in which event the report ordinarily will be ordered. Pertinently, the Legislature has acted conformably in subdivision 3 of section 50-h of the General Municipal Law, effective April 7, 1958 (cf. Calderon v. City of New York, 15 Misc 2d 346).